The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. I now call case number 19-1990, Oliva v. DVA. Ms. Seeluck, whenever you're ready to proceed, we're ready. Thank you, Your Honor. Good morning. May it please the Court, my name is Jennifer Seeluck, Counsel for Appellant Stephen Oliva. It is undisputed in this case that Mr. Oliva is a government whistleblower who was retaliated against and is entitled to damages for such retaliation. The only question... Ms. Seeluck, this is Judge, may I have a preliminary question for you before you get into your argument? Yes, Your Honor. You argued a case last month with an appeal from the Claims Court. And it seems to me that the remedies that are at issue in both of these cases are the same, even though you have a different theory. Isn't there a conflict? And isn't the other case in violation of the Hausdall case in the Supreme Court? You're correct, Your Honor. There is a second case that was argued last month, and the claims at issue in that case related to a breach of contract that is the contract being at issue in this case as well. However, there are different damages at issue in the breach of contract case. Mr. Oliva initially sought compensation at the MSPB... You've agreed in that other case, and I assume you agree here, that he can't recover in each case for the same damages. He can't recover twice, right? That's correct. He has claimed... He filed the breach of contract case as a result of the decision that was reached by the Board here, where the Board stated the breach of the agreement is more accurately the approximate cause of his non-selection rather than the reprimand itself. If he recovers for the relocation incentive for the El Paso position here, we agree that he is not entitled to recover those same damages in the breach of contract case. Why is it that this case is not the prevailing case, the predominant case? The House Bill says these civil service cases all should be in the Board and not in the courts. So shouldn't this case be the dominating case? The issue here is that the government is trying to argue that Mr. Oliva is not entitled to these damages in either case. Your answer to the question is that the Court of Federal Claims case is a breach of contract case based on a breach of the settlement agreement, whereas here it's the civil service violation that's at issue. That's correct. Right? Yes. And the reasoning for it is because of the different administrative jurisdictions, which is why Mr. Oliva was required to file a second action in the Court of Federal Claims because of the breach of contract issue, whereas here he is seeking for the damages as a result of his original whistleblower claim. So what are the damages you're seeking in the Court of Claims case based on breach of contract? The same 25% or whatever the travel incentive that you're seeking here? Yes. So the difference here is that Mr. Oliva is seeking, in this case, the emotional damages as a result of the letter of reprimand remaining in his file and for the relocation incentives in the El Paso case, whereas in the breach of contract case, he is also seeking the El Paso relocation incentives due to the fact that the board opined that those damages were more of a proximate cause. No, I understand that. But what else are you seeking? And here you're seeking the sick leave and the pain and suffering damages. You said in the Court of Claims you're seeking this relocation thing. Anything else in terms of the damages you're seeking in the breach of contract claim? Yes, Your Honor. And there was also a second breach issue in the breach of contract case. Mr. Oliva had applied for another position in Greenville, and the contract was breached in relation to that position. And Mr. Oliva was eventually terminated, and he is seeking for his lost salary. Okay. Okay. Did you respond to the Supreme Court case? Did you respond to that? Did you want to respond to that? I apologize, Your Honors. I am not familiar with this particular Supreme Court case. Would you do me the pleasure of repeating the case? The case was United States v. Fausto, where the Supreme Court said that any of these civil service matters remain solely in the jurisdiction of the board and not the courts. And so the issue in this case is that we're seeking damages as a result of the retaliation and all of the damages that follow from any foreseeable consequences as a result of that retaliation. The second case, the breach of contract case, was only filed as a result of the board's decision here, saying that the breach was the proximate cause for Mr. Oliva's relocation incentive damages. Now, the administrative judge here made a lot of factual findings with regard to the selection for the position and also with regard to the pain and suffering damages that were incurred. What's our standard of review for that? The standard of review is a substantial evidence standard. However, the issue here is that there is no substantial evidence to support the board's factual findings. First, one of the board's factual findings was that Mr. Oliva was only harmed for a three-week period. However, the letter of reprimand was not expunged until April 17, 2015. Let me ask you about that. I mean, there's a little gap, and I don't know whether this is in the record. But what's probative, it seems to me, is not necessarily only when the letter was expunged, but when he found out that the letter had not been expunged. So do we know when that is? Because each letter may not have been expunged. If he didn't know that, then it doesn't seem to me there would be a nexus between the pain and suffering that that caused. That's correct, Your Honor. Mr. Oliva found out about the letter of reprimand remaining in his file due to his following up about the loss of the El Paso position in March 2015. There was then a letter... And that's somewhere in the record, I assume. So the time in which he incurred pain and suffering because of the remainder of the reprimand letter being in his file would have been from some period in March and April, right? A matter of weeks, I assume? It's not only that he knew about the letter of reprimand still remaining in his file, but also the impact it had in being in his file, being able to be accessed by anyone in the agency any time he was being looked up, any time he inquired about a position. So the damages that he had suffered, he had continued to suffer emotional pain as a result of knowing that this letter was in his file, and he did not receive notice that it was expunged, that there was a letter that was sent. Hold on. I'm trying to interrupt you. Sorry. So he found out that the letter had not been expunged in March, and it was actually expunged in April, right? So we're talking about a period between March and April? I believe that Mr. Oliva knew that the letter was still on his file, but I don't believe that there is distinct evidence in the record of any kind of moment where he still found out that the letter was still on his file. It was just that he knew definitely it was still in his file in March when he applied for the El Paso position and found out that the letter of reprimand was disclosed at that time. And so the letter had remained on his file since its issuance through April. Right. So am I right? Again, I'm waiting for kind of a yes or no answer. So based on the record evidence, the best we can discern is he found out about the reprimand not having been expunged sometime in March, and it indeed was expunged in April. Is that a fair assessment of the record? I believe it's fair to say yes, that he did know at least in March that it still had not been expunged, but I am not sure at this time without consulting with my client whether he had continuously knew about the letter for the entire period, which I believe anyone with access to his file at the agency would have known that the letter remained on his file continuously from the day it issued through April. So I don't believe that his damages would be limited  With regard to the pain and suffering amount, and this again goes to kind of our standard of review, you're seeking, I don't recall, the judge awarded $3,500, correct? That's correct. And you're seeking $25,000 or $17,000? I can't remember. Based on the court's calculation, for calculating the amount through April 17th, the amount is calculated to be $16,500. Okay. So what standard of review was an appellate court supposed to apply in assessing whether or not the judge erred in awarding $3,500 versus $17,000? I believe that the standard of review here is both the arbitrary standard and the substantial evidence standard because the $3,500 award was explained by the board of being limited to that three-week period, which we know is a mistake of fact because on Appendix 15, the board stated that the agency rescinded the January 2015 letter of reprimand only three weeks after it issued. However, it was not rescinded until April. Okay. I think I heard the bell. Did you hear the bell? I did not, but I am happy to reserve my remaining time for rebuttal. I rang the bell at five minutes. There is now two-and-a-half minutes left. Okay. Well, we'll restore your rebuttal, but if my colleagues might have more questions. Nothing? Not now. All right. All right. Why don't we hear from the government? Thank you very much. Good morning, Your Honors, and may it please the Court. The administrative judge's damages award here is supported by substantial evidence. Let me ask you a question. The serious logical flaw in the reasoning of the administrative judge here with respect to causation and the loss of the El Paso position, and that is that the HA said that Nancy knew about the letter of reprimand, but he testified that it didn't have an effect, but denied that he knew about it. And what the HA says is, well, just because Nancy testified inaccurately on one point doesn't mean that she has testimony on another point. And, of course, the cases do support that notion. The problem here is that Nancy's inaccurate testimony was only on a single point, and that is whether the letter of reprimand influenced the selection, and his testimony is it didn't influence the selection because I didn't know about it. HA finds that that testimony was inaccurate. He did know about it. So I'm not quite understanding how the judge can say, oh, well, Nancy testified that it didn't have any effect because he didn't know about it. I don't believe his testimony is correct that he didn't know about it, but somehow I still believe that he wasn't influenced by it. How can that be logically correct? Well, Your Honor, first there are other hurdles that Mr. Oliva has to overcome. Yes, I understand, but that's my question. Yes. I'm trying to find the page where you're referring to the administrative judge's opinion, but there's basically testimony. There's not testimony from Nancy where he was being asked questions. He just orally or in some sort of deposition. He responded to a questionnaire. His sole testimony is that the letter of reprimand didn't affect the selection because I didn't know about it, and the administrative judge finds that that was not true, that he did know about it, right? Right. I'm sorry, Your Honor. How can the judge then go on to believe that it didn't affect the decision-making process when the only reason that was given for it not affecting the process was he didn't know about it? Your Honor, the first point is correct. He said he didn't know about it. The second point, I think the judge credited the written testimony of Ms. Harbin who said, yes, I told them about it. So there's an apparent conflict there, but what Ms. Harbin said is that she told them about it, but she also said that it was a quote-unquote bogus reprimand or based on bogus facts and that it shouldn't have been there and that it had been. You're not addressing my question. My question is how at one and the same time can the judge disbelieve his testimony that he didn't know about it and say that he did know about it and then say that his testimony that he didn't know about it is sufficient to sustain the lack of connection between the letter of reprimand and his not getting the job? That's not consistent, is it? Well, the judge didn't just use that inconsistency. The judge looked at the numerical rating. I think that was the driving determinant there because there were five selection panels and all of them had rated the person who was ultimately selected higher with the exception of one union panel or the main leadership panel rated the two candidates equally, and so the judge looked at those in deciding that there was... Dancy was on the leadership panel, right? Dancy was in charge of the process. I don't believe Dancy was on the leadership panel. The way I read the record, he says the acting associate director, which is him, was on the leadership panel. So if, in fact, he was influenced by the letter of reprimand, that could have influenced the leadership panel. There's also no indication in the record, Your Honor, that the letter of reprimand was disclosed before the scores were tabulated. And, in fact, I think that his testimony... That's not correct. There was a couple-week period there between the advice to Dancy about the letter of reprimand and the evaluation. I mean, we seem to have a finding of fact here which is internally inconsistent. Do you agree that it's internally inconsistent? Not necessarily, Your Honor. I think that the finding of fact is twofold. One is that Dancy said he didn't know about the letter of reprimand. And two is that the second finding, I guess, is twofold. One is that Ms. Harbin told him about it, and that's undisputed. And two is that it didn't affect his decision. Your Honor is suggesting that that second finding is inconsistent with the first. Is that correct? Yeah, and the only reason he gave for it not affecting his decision is he didn't know about it, which has been found to be false. And I think the explanation for that is the one provided by Ms. Harbin in that when she told him about it, she told him that that was a bogus letter of reprimand and it had been removed from the file, so he didn't register it as an actual letter of reprimand that needed to be taken into account. I think that is a plausible explanation for this. Sure, it's a plausible explanation, but it's not the one he gave. The explanation he gave is I didn't know about it, which has been found to be false. Right, but that doesn't mean, that could mean that he just didn't, he did not register when it was told to him by Ms. Harbin during the process. Well, can I go back to, I mean, one of the predicates is that, I mean, I think there, I'm looking at the AHA's opinion. He's talking about a number of panels that were part of the solicitation panel. Is that correct? Because I'm not seeing an indication, and I don't know, I think Judge Dykes, so I take him at his word, said that Mr. Dancy was part of the leadership. There were five panels that the judge wrote, right? That's correct, Your Honor. Have he discussed what their conclusions were? Yes, and that's at Appendix 8 and 9 of the opinion. He talks about three of the five panels that rated the candidate that was ultimately selected ahead of Mr. Oliva, and the panel that gave them the same score was the leadership panel, and one, the union panel, rated Mr. Oliva above the person who was ultimately selected. So there were three other panels that had rated the person ultimately selected higher than Mr. Oliva. And this is also at Appendix 8. I'm also looking at Appendix 8, which is the AHA's opinion, where I guess there is testimony by Dancy that about, which I guess is just factual, about how the appellant had been outside working for a private organization for a portion of the time, correct? That is correct. Can I ask you about the three-week issue? I mean, why isn't that a bit of a problem? If indeed, I mean, why is the date of the letter, the reprimand was allegedly removed from his file, but we know it wasn't, why do we count that date as being anything? Well, for two reasons, Your Honor. One is that the wrongful agency action here is the placement of a letter of reprimand that shouldn't have been, or is the issuance of a letter of reprimand to Mr. Oliva for actions that he should not have been reprimanded for. And the agency conceded that that was improper on January 30th and took that reprimand back via agreeing to retract it through the settlement. So at that point, the agency no longer views Mr. Oliva as being reprimandable in a way. It now has conceded that it should not have issued that letter of reprimand. Everything after that, I think, is more correctly characterized as a breach of the settlement agreement because the agency didn't follow through on its administrative burden, its ministerial burden to remove the letter and to inform Ms. Harbin that she shouldn't talk about it in a reprimand. And so that date is significant because the harm here to Mr. Oliva is from the agency viewing him as somebody who needed to be reprimanded. And that's what the, at least that's what the only issue in this appeal. Let's assume, excuse me, but let's assume hypothetically that he was watching his file every day and that he knew that the truth, which is that the fact, which is that the agency failed to comply, allegedly failed to comply with the breach, with the settlement agreement and didn't take the letter out until April. If we knew that he knew that, then why wouldn't his whatever pain and suffering or concerns flowed from the letter of reprimand not have been extendable through that period? You're right. Your theory is he thought the reprimand was there and when the agency agreed to take it out, he assumed it was out. End of story. But we all know now that they didn't take it out. And what if he had known at the time that they hadn't complied with the agreement? Wouldn't that inure to his pain and suffering related to the reprimand itself since it's still in his file? Your Honor, I think at that point he has a breach claim. He has a claim that the agency didn't follow through on its obligation to remove that. But the agency, after it signs the settlement agreement, no longer views Mr. Oliva as being subject to that reprimand. So I don't, even if he had known about it, I think it doesn't change the fact that this is more of, it's a routine breach of settlement agreement. Well, part of his claims with regard to the reprimand is how the public perceived him and his public persona, ya-da-da-da-da, and that goes more to whether or not the reprimand was still being used and still in his file as opposed to what he knew about the agency having agreed to take it out. Am I wrong about that? Well, I think he tries to argue that, but there's no evidence that, aside from this one disclosure by Ms. Harbin, that the wrongfully, after January 30th, the wrongful reprimand somehow had any impact on his reputation or his standing. I think that would be a different case, and that could, if the agency was still publicizing the reprimand, despite agreeing to withdraw it, again, I think that's a routine breach of an agreement, and if he was concerned about that, as he did here, when he found out, I believe, around April 8th, in the Fed Appendix 148, he notified the agency, and the agency shortly thereafter removed it. I think the main harm that he alleges from this letter of reprimand was retracted by the agency on January 30th, and that's why that date figures prominently in the administrative judge's decision as cutting off the pain and suffering damages that he weighed and made this careful factual calculation about all the various actions that Mr. Oliva claimed were causing him emotional distress, and the judge here went through and tried to sort out the various strands of the harassment that Mr. Oliva claimed started as early as 2012, the harassment that happened in the summer of 2015 with the search of his car, all of those which were not part of this claim, and the judge tried to pull those apart and awarded what he believed was a reasonable figure, and this court typically does not re-weigh those factual determinations. And the HA did limit it because to that three-week period, he says specifically at the top of page A18, the duration of the agency's action was a short period, three weeks, that is the time between the letter of reprimand and the settlement agreement. He seems to be unwilling to consider that there could be continuing harm from the letter remaining in the file. Would that be a fair statement? Your Honor, you're referring to the top of page A18? Yeah, he says the agency's action was of, quote, short, was short, three weeks, that is between the time of the reprimand and the settlement agreement. He doesn't consider the period between the reprimand and the removal from the file. That's correct, and that's because when the settlement agreement was signed, the agency has retracted the reprimand. It's not in paper form from his file, but certainly as an official statement, you have a settlement agreement signed by a representative of the agency saying, we retract the reprimand and we will give you a positive reference. That cabins the duration that Mr. Olivo was harmed by the letter. Now, he certainly alleges harm from the breach of the settlement agreement, and he alleges that here and in the other case, but that's a different type of issue. And I heard the tone, so I understand my time is up. Well, I have another question, and certainly, well, hold on a moment. I don't know if Judge Steiger finished with his question, but I have one, and that's that at A15, the judge says the appellant did not demonstrate any of the effects of that established harm were permanent or catastrophic. Where does that standard come from? I mean, certainly, if something is permanent and catastrophic, it would obviously likely result in a finding of substantial damages, but the fact that it was not permanent and not catastrophic doesn't dictate that there should be very minimal or no damages, right? That's right. I think it's a case-by-case evaluation, and I think on page 16. Well, where does that standard come from? I'm not sure that permanent or catastrophic is some sort of charismatic catchphrase that comes from any case law. I think the judge looked at the cases that he cites on page 16 and 17 and looked at the sort of damages that are awarded for more permanent harm versus less permanent harm. Here, there was a lot of different allegations of harm from many different sources or from many different causes, and there was also the timing of the harm, of the impact on Mr. Oliva was spread over a long period of time, and so I don't think that he excluded Mr. Oliva's claim simply because it was not permanent or catastrophic. I think that was just a characterization of the type of harm that could warrant a higher award of damages. If Mr. Oliva's hypertension was permanent and he could show that it was because of a lot of reprimand, perhaps the judge would have awarded a higher amount. All right. You've answered the question. Do you have any other further questions? I have one question. Are you familiar with the household case that I mentioned? I am, Your Honor, yes. So how do you think that affects the remedies that are in two different forms? Well, I think, Your Honor, this case doesn't follow Fausco. The letter of reprimand here was properly brought before the board as a personnel action. No, no. The arrangement settlement agreement is court. I agree that this one belongs here, but why doesn't the other one belong in the board too? Because the other one is just a routine breach of agreement, and those routinely go to the court of claim. Well, that is a civil service case. Well, if it had been an MSPB breach of settlement claim, we get those all the time. The MSPB is the one that adjudicates those, right? My understanding is those are for enforcement of the settlement agreement, not for damages from a prior breach, Your Honor. But, Your Honor, to Judge Mayer's point, the MSPB here did consider it. I mean, the MSPB was not aware of the COPC case because that case was filed, and it found for other reasons that Mr. Oliva was not entitled to damages from the breach of contract action. So he did get his day in court on that claim here at the board, even if you take a sort of a broader reason, as to how these cases are meant to be channeled to the board and also the court of claim. Did either party in this case ask that our court hear the cases together or consolidate them in any way, shape, or form? Because that would have seemed to, in hindsight, made a lot of sense. Was that ever requested or suggested by the parties? I don't believe that was suggested by either party. And in hindsight, I think that may have been a wise choice. I'm not sure why that didn't happen, Your Honor. Okay. My colleagues have nothing further? No. Judge Mayer? Okay. Let's hear for rebuttals from the other side. Thank you very much. Thank you, Your Honor. First, Mr. Dancy was the decision-maker here, but his testimony was incorrect about a keystone fact. He was told about the letter of reprimand, as Your Honor pointed out. Hold on. Hold on a second. I just don't know where it is in the record. AJ, I think, talked about five different rating panels, selection panels. Is there anything in the record to show whether or not Mr. Dancy was on any of those panels? So, I believe Mr. Dancy also... It might be in his affidavit in terms of discussing the panel. It's on page 131 of the record. Yes. I just turned to it. Thank you, Your Honor. The membership of the leadership panel, including the acting associate director, which is what his position was. And so, on appendix 131 to 132 is where Mr. Dancy had explained the different panels. However, Mr. Dancy was the person who ultimately ranked the candidates, and this is clear that it happened after he had known about the letter of reprimand. However, he later on in his affidavit on... I don't know. Where are you getting that he's the one that ranked the... I thought the panels ranked the candidates. I mean, they came up with the number of points, which translates into rating, right? Where is it that Mr. Dancy ranked the candidates? So, the ranking of the candidate is discussed in appendix 132 in Mr. Dancy's affidavit. The numerical scores are given by the panels, according to him. However, this conflicts with the nomination package, which is explained in appendix 77, that the leadership group was the only group which scored the applicant, using a total of eight performance-based interview questions. And then, the separate question is, what was the overall ranking of the complainant and of the selectees? And he also emailed... There's emails that point out that Mr. Dancy was the one who ultimately ranked the candidates, which is in the record, but I'm having a hard time finding exactly the pin site for that email. Okay, well... And because he was part of the leadership group and he knew about the letter of reprimand, the only evidence that the court relied upon in determining that other factors contributed to Mr. Oliva not being selected for the position is fully based on Mr. Dancy's affidavit, which we know is wrong on the Keystone Fact, and therefore falls apart. And the second point is, while the government, the board, referred to the EEO agreement as a settlement agreement, this is not a settlement of Mr. Oliva's claims. Mr. Oliva only agreed to retract his EEO complaint, but it's undisputed that this didn't settle any of the claims for the damages for the retaliation. Mr. Oliva cannot recover for the emotional damages in a breach of contract case. His pain and suffering cannot be cut off by the government's promise to retract when the government didn't actually remove this letter from his file on April 17. He continued to suffer after he found out that this letter was still not been expunged, and even worse, that it was disclosed when he was trying to get himself out of a hostile work environment. I want to come back to the question of his damages claim for losing the El Paso position. We've had a lot of discussion about whether the A.J.'s determination that the letter of reprimand played no part in this, and maybe the A.J.'s finding in that respect is actually inconsistent. But there seems to be an alternative ground for denying relief with respect to the El Paso position, and that is the A.J.'s finding that it wasn't foreseeable that the issuance of the letter of reprimand would have that impact on the El Paso job, and in fact, the approximate cause of the loss of the El Paso job, if there was an approximate cause at all, was the breach of the settlement agreement. What's your answer to that? Why was the A.J. wrong in finding a lack of foreseeability between the very issuance of the letter of reprimand and the loss of the El Paso job? Yes, Your Honor. Disclosure of the letter of reprimand while it remained on Mr. Oliva's file is foreseeable because anyone at the agency with access to his file could see this letter, and as a result, it was disclosed when there was a reference check. And that's the entire purpose of such a retaliation. It is to make it known within the agency about his supposed reprimand. And so this is not an intervening act by a third party, as the government had argued, but rather the disclosure was by an agency employee acting within her employment. It's not an intervening act question. It's a question of whether the issuance was foreseeable when the letter of reprimand was issued, that it would cause the loss of a job in El Paso. Right, Your Honor. That's what I was trying to explain with the entire point of issuing a letter of reprimand, is to make it known within the agency and anyone who inquires about him, about Mr. Oliva, that he was reprimanded. And so as a result, you know, it's foreseeable that that would impact people's decisions surrounding whether to hire him. And I did hear the bell, and if... Yes, if you have a final thought, the bell has rung, but you were asked questions. So if you have a final thought, I would allow you to do that. Your Honor, I believe I've sufficiently answered your questions. I'll just proceed with my conclusion. Quickly. So for the reasons discussed today and in the brief, Mr. Oliva respectfully requests that this court issue an order reversing and vacating the board's decision and award the full amount of damages caused by the retaliatory letter of reprimand. Thank you. Thank you. We thank counsel, we thank both sides, and the case is submitted. That concludes our proceeding for this morning. The Honorable Court is adjourned until tomorrow morning at 10 a.m.